IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **C.W. ALLEN AND S.D. ALLEN,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4710-L** |
| | § | |
| **DOVENMUEHLE MORTGAGE, INC.** | § | |
| **AND MATRIX FINANCIAL SERVICES** | § | |
| **CORPORATION,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' C.W. Allen, et al., First Amended Motion to Remand Based on Lack of Subject Matter Jurisdiction (Doc. 6), filed December 31, 2013; Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Motion to Dismiss for Failure to State a Claim (Doc. 8), filed January 30, 2014; and Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Renewed Motion to Dismiss for Failure to State a Claim (Doc. 16), filed April 11, 2014.

Having considered the motions, briefs, pleadings, record, and applicable law, the court **denies** Plaintiffs' C.W. Allen, et al., First Amended Motion to Remand Based on Lack of Subject Matter Jurisdiction (Doc. 6); **denies as moot** Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Motion to Dismiss for Failure to State a Claim (Doc. 8); **grants** Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Renewed Motion to Dismiss for Failure to State a Claim (Doc. 16) with respect to all claims asserted by Plaintiffs, *except their claim pertaining to Defendants' failure to satisfy the TDCPA's bond requirement*, and

**dismisses with prejudice** *all claims asserted by Plaintiffs other than their claim pertaining to Defendants' failure to satisfy the TDCPA's bond requirement*.  Further, for the reasons herein explained, the court **moves *sua sponte*** to dismiss Plaintiffs' remaining claim based on Defendants' failure under the TDCPA to obtain a bond.

## I.      Factual and Procedural Background

This case involves the attempted foreclosure on real property located at 933 Plantation Drive, Desoto, Texas 75115 ("Property"), which Plaintiffs C.W. Allen and S.D. Allen ("Plaintiffs") purchased on September 26, 2004.  To finance the purchase of the Property, Plaintiffs signed a promissory note ("Note") in the amount of $202,500 with GN Mortgage Corporation as the lender. The Note was secured by a deed of trust ("Deed of Trust") on the Property.  Plaintiffs admit that they defaulted under the Note in April 2004, and filed for bankruptcy on April 22, 2004.  Plaintiffs were discharged from the bankruptcy on October 3, 2008, but it does not appear that their debt under the Note and Deed of Trust was discharged, and it is unclear from Plaintiffs' pleadings whether their loan was modified or reinstated after their bankruptcy became final.

On October 15, 2004, Matrix Financial Services Corporation ("Matrix") notified Plaintiffs that their Note and Deed of Trust had been transferred to it and that Defendant Dovenmuehle Mortgage, Inc. ("DMI") would be acting as the mortgage servicer.  Eight years later, on August 12, 2012, and again on October 28, 2012, DMI notified Plaintiffs in writing that their loan was in default. Plaintiffs also allege that Defendants provided them with foreclosure notices.

On October 29, 2013, Plaintiffs filed this action in the 116th Judicial District Court, Dallas County, Texas, against DMI and Matrix (collectively, "Defendants"). Defendants removed the case to federal court on November 27, 2013, based on diversity and federal question jurisdiction.  Before

the case was removed, Plaintiffs filed a First Amended Petition on November 20, 2013, in which they sought an ex parte temporary restraining order to stop the foreclosure sale of the Property scheduled for November 21, 2013.  The application for ex parte temporary restraining was granted on November 20, 2013, and Plaintiffs have apparently remained in possession of the Property since filing suit.

On December 27, 2013, Plaintiffs moved to remand the case to state court.  On December 31, 2013, Plaintiffs filed an amended motion to remand, contending that federal question jurisdiction was lacking.  On January 30, 2014, Defendants moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 8). After briefing on this motion to dismiss was complete, Plaintiffs requested to file an amended complaint, which the court granted.

After Plaintiffs filed their First Amended Complaint on March 28, 2014, Defendants again moved to dismiss this action on April 11, 2014 ("Renewed Motion to Dismiss") (Doc. 16), contending that Plaintiffs' First Amended Complaint is substantially the same as the Original Complaint filed in state court and fails for the same reasons previously asserted by Defendants.  On May 1, 2014, Plaintiffs filed a Second Amended Complaint ("Second Amended Complaint") and Objections ("Objections") to Defendants' Renewed Motion to Dismiss (Doc. 17) in a single document that is in the form of a complaint but consists of mostly legal arguments and citations.  In the Second Amended Complaint, Plaintiffs assert claims for breach of contract and alleged debt collection violations under the Fair Debt Collection Practices Act ("FDCPA"), Texas Debt Collections Practices Act ("TDCPA"), the Deceptive Trade Practice Act ("DTPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Dodd-Frank Act.  Except for the addition of more legal arguments that are responsive to the Renewed Motion to Dismiss, Plaintiffs' Second Amended

Complaint is identical to their First Amended Complaint.  Defendants did not file a reply and have

not since filed another motion to dismiss in response to the Second Amended Complaint. Defendants

therefore appear to be standing on their most recent Renewed Motion to Dismiss.

## II.     Plaintiffs' Amended Motion to Remand

Defendants removed this case based on federal question and diversity jurisdiction.  Plaintiffs

contend that the court lacks subject matter jurisdiction because their pleadings do not raise a federal

question, but they do not address whether subject matter jurisdiction is lacking based on diversity.

In response to the motion to remand, Defendants maintain that the court has subject matter

jurisdiction over the action based on federal question and diversity jurisdiction.  The court agrees.

A federal court has subject matter jurisdiction over civil cases "arising under the

Constitution, laws, or treaties of the United States," or over civil cases in which the amount in

controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship

exists between the parties. 28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited jurisdiction

and must have statutory or constitutional power to adjudicate a claim.  *See Home Builders Ass'n of

Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred

by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action

if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144,

151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir.

1994)).  "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate

Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).  A federal court has an independent duty, at any level

of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.

*Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must

be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*"). As this action was removed on the basis of diversity of citizenship and the amount in controversy, the court turns to that issue.

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)). Failure to allege adequately the basis of diversity mandates remand or dismissal of the action. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). A notice of removal "must allege diversity both at the time of the filing of the suit in state court and at the time of removal." *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir. 1993) (quotation marks and citations omitted).

A natural person is considered a citizen of the state where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). "'Citizenship' and 'residency' are not synonymous." *Parker v. Overman*, 59 U.S. 137, 141 (1855). "For diversity purposes, citizenship means domicile; mere residence in [a] [s]tate is not sufficient." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (citation and quotation marks

omitted).  "Domicile requires residence in [a] state and an intent to remain in the state."  *Id.* at 798

(citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).   A corporation

is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has

its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

 For diversity purposes, the amount in controversy normally is determined by the amount

sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith.

28 U.S.C. § 1446(c)(2); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.

1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).   Removal is thus proper if it

is "facially apparent" from the complaint that the claim or claims asserted exceed the jurisdictional

amount.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.), *reh'g denied*, 70 F.3d 26 (5th

Cir. 1995).  In a removal case, when the complaint does not state a specific amount of damages, the

defendant must establish by a preponderance of the evidence that "the amount in controversy exceeds

the [$75,000] jurisdictional amount."  *St. Paul Reinsurance*, 134 F.3d at 1253.  "The preponderance

burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to

recover more than what is pled.  The defendant must produce evidence that establishes that the actual

amount of the claim will exceed [the jurisdictional amount]."  *De Aguilar*, 47 F.3d at 1412 (footnotes

omitted).  The test to be used by the district court is "whether it is more likely than not that the

amount of the claim will exceed [the jurisdictional amount]."  *St. Paul Reinsurance*, 134 F.3d at

1253 n.13.  As the Fifth Circuit has stated, "[t]he district court must first examine the complaint to

determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount.  If it is

not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount

in controversy."  *Id.* at 1253.  If a defendant fails to establish the requisite jurisdictional amount, the

court must remand the case to state court.  If a defendant establishes that the jurisdictional amount has been met, remand is appropriate only if a plaintiff can establish "to a legal certainty" that his recovery will not exceed the jurisdictional threshold.  *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 388 (5th Cir. 2009).

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it."  *St. Paul Reinsurance*, 134 F.3d at 1253 (footnote omitted).  Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction; if a case is initially filed in federal court, the burden rests with the plaintiff to establish that the case "arises under" federal law, or that diversity exists and that the amount in controversy exceeds the jurisdictional threshold.

Plaintiffs allege in their First Amended Petition, the live pleading when Defendants removed the action, that they are citizens of Texas.  The Notice of Removal states that Dovenmuehle is a corporation incorporated under the laws of Delaware with its principal place of business in Illinois, and Matrix is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.  Diversity of citizenship therefore exists between the parties because each Plaintiff has a different citizenship from each Defendant.

In their First Amended Complaint, Plaintiffs sought a permanent injunction to preclude Defendants from foreclosing on the Property and reporting negative information regarding their loan to credit bureaus.  Plaintiffs also sought specific performance of the Note.  In actions for injunctive relief, the amount in controversy is "the value of the right to be protected or the extent of the injury

to be prevented." *Hartford Ins. Group v. Lou–Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). When a plaintiff in a mortgage dispute seeks injunctive relief to preclude foreclosure of real property, the amount in controversy is the value of the real property at issue. *See Copeland v. U.S. Bank Nat. Ass'n*, 485 F. App'x 8, at *1 (5th Cir. 2012) (noting that "the amount in controversy exceeds $75,000 due to the value of the subject property"). When specific performance of a contract is sought, the the amount in controversy for diversity purposes is the value of the contract. *Creel v. Richardson*, No. 7:00-CV-224-R, 2001 WL 257844, at *2-3 (N.D. Tex. Mar. 9, 2001).

The Notice of Removal states that, according to the Dallas County Appraisal District, the Property has a current market value of $193,860.   The amount of the Note is $202,500.   Both amounts are greater than 75,000.   The amount in controversy is therefore satisfied, and federal jurisdiction is proper on the basis of diversity of citizenship.   As a result, the court need not address the parties' contentions as to whether federal question jurisdiction exists.   Accordingly, the court **denies** Plaintiffs' C.W. Allen, et al., First Amended Motion to Remand Based on Lack of Subject Matter Jurisdiction (Doc. 6).

## III.   Defendants' Motions to Dismiss

### A.   Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).   A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court

in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B.      First Rule 12(b)(6) Motion to Dismiss (Doc. 8)

As previously noted, after Defendants filed their first motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs requested to amend their pleadings, which the court granted. Defendants then filed their Renewed Motion to Dismiss, to which Plaintiffs responded

with a Second Amended Complaint and Objections to the Renewed Motion to Dismiss. Defendants' prior motion to dismiss is therefore moot. Accordingly, the court **denies as moot** Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Motion to Dismiss for Failure to State a Claim (Doc. 8).

### C.    Renewed Rule 12(b)(6) Motion to Dismiss (Doc. 16)

Defendants have moved for dismissal of all of Plaintiffs' claims in their Renewed Motion to Dismiss. Although Defendants' Renewed Motion to Dismiss was filed before Plaintiffs filed their Second Amended Complaint and Objections to the Renewed Motion to Dismiss, the allegations in the Second Amended Complaint are identical to those in their First Amended Complaint, except for the assertion of additional legal arguments. Accordingly, for purposes of ruling on the Renewed Motion to Dismiss, the court considers the claims as pleaded in the Second Amended Complaint, as well as the Objections and legal arguments in the Second Amended Complaint that are responsive to the Renewed Motion to Dismiss.

### 1.    Breach of Contract

Plaintiffs allege that Defendants breached the Deed of Trust by: (1) failing to provide them with an accounting; (2) failing to provide them with notice of the action required to cure their alleged default; and (3) failing to accurately account for and apply mortgage payments made by Plaintiffs. With respect to an accounting, Plaintiffs contend that the Deed of Trust specifically requires Defendants to provide them "without charge, an annual accounting." Pls.' Second Am. Compl. 9. With respect to opportunity to cure, Plaintiffs contend that the Deed of Trust requires Defendants to provide them with the specific amount required to cure a default. Defendants respond that Plaintiffs' contract claim fails because the Deed of Trust does not require them to do what Plaintiffs

allege.  Defendants also contend that Plaintiffs' contract claim fails because they admit that they defaulted under the Note and Deed of Trust in April 2004.

The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract, (2) plaintiffs' performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to the plaintiffs resulting from the breach.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003).  Plaintiffs have not stated a claim upon which relief can be granted for breach of contract because they fail to allege that they performed their contractual obligations by remaining current on their mortgage payments until the alleged breach.  Plaintiffs instead focus almost entirely on Defendants' alleged breaches.  While they allege that they "made several lump sum payments during the course of their loan which reduced the principal balance and . . . interest owed," Plaintiffs fail to allege that they were current on their mortgage payments and made the required payments under the Note and Deed of Trust on a monthly basis as they became due.  *See Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *10 (N.D. Tex. June 26, 2012) (dismissing "plaintiffs' breach of contract claim because they . . . failed to allege that they performed their contractual obligations by remaining current on their mortgage payments until the alleged breach").  Moreover, the Deed of Trust does not require Defendants to provide Plaintiffs with an accounting upon default or demand.  It merely requires the lender to provide the borrower with an annual accounting of escrow funds.  Defendants are therefore entitled to dismissal of Plaintiffs' contract claim.

### 2.      DTPA

Plaintiffs state in passing in their Second Amended Complaint that "misrepresenting the amount owed on a debt is a violation of the DTPA."  Pls.' Second Am. Compl. 11.  Defendants

contend that Plaintiffs' DTPA claim necessarily fails as a matter of law because Plaintiffs are not consumers. The court agrees.

The elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); Tex. Bus. & Com. Code Ann. § 17.50(a)(1). Whether a person qualifies as a consumer under the DTPA is a question of law for the court to decide. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied). A person who seeks only to borrow money is not a consumer under the DTPA because lending of money, without more, does not involve a good or a service. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984). Likewise, the servicing of an existing loan does not involve a good or service. *Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 167 (Tex. App.—Austin 1996, no pet.) (finding loan servicing to be an ancillary service not contemplated by the DTPA); *Porter v. Countrywide Home Loans, Inc.*, No. V-07-75, 2008 WL 2944670, at *3 (S.D. Tex. July 24, 2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction."). Section 392.404 of the Texas Finance Code includes a tie-in provision that states any violation under the TDCPA will also constitute a deceptive trade practice, actionable under the DTPA. Regardless of whether Plaintiffs' DTPA claim is based on their TDCPA claim or predicated on an alleged violation of the DTPA that is independent of their TDCPA claim, they must still qualify as consumers under the DTPA. *Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27-29 (5th Cir. 2010).

Plaintiffs' DTPA claim is based on their contention that Defendants misrepresented or inaccurately reported amounts owed under the Note and Deed of Trust and failed to correct the inaccuracies or explain how the debt was calculated. Thus, Plaintiffs do not qualify as consumers because their DTPA claim pertains to Defendants' servicing of their mortgage. Defendants are therefore entitled to dismissal of Plaintiffs' DTPA claim.

### 3.    RESPA

Plaintiffs contend that Defendants violated section 2605(f)(1) of RESPA by failing to provide an accounting of their mortgage, failing to respond timely to their "qualified written requests" ("QWR"), and failing to correct inaccuracies regarding the amount due under the Note and Deed of Trust or explain the debt amount. In addition, Plaintiffs contend that, because the court in *Rawlins v. Dovenmuehle*, 64 F. Supp. 2d 1156, 1163 (M.D. Ala. 1999), entered judgment against DMI and awarded the plaintiff in *Rawlins* pattern and practice damages for DMI's failure to respond to a QWR and provide an accounting of the borrower's mortgage, DMI's alleged failure to respond to QWRs and provide an accounting in this case is evidence of "a pattern of unlawful and negligent conduct." Pls.' Second Am. Compl. 11-12. Plaintiffs also appear to contend that Defendants or DMI, like the defendant in *Ennis v. Bank of America, N.A.*, No. 3:12-CV-0295-D, 2013 WL 840696, at 2 (N.D. Tex. Mar. 7, 2013), are liable under RESPA for "inaccurately impos[ing] late fees after violating RESPA by failing to properly investigate and provide a written response to a QWR." Pls.' Second Am. Compl. 8.

RESPA applies to loan servicing duties and requires a loan servicer to "provide a written response acknowledging receipt" of a "qualified written request" from a borrower relating to the servicing of the borrower's loan "within 5 days (excluding legal public holidays, Saturdays, and

Sundays)" unless the action requested by the borrower is taken within such period. 12 U.S.C. § 2605(e)(1). "Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request," the loan servicer must make appropriate corrections to the borrowers account, including the crediting of any late charges or penalties; to the extent applicable, provide a written explanation as to why the loan servicer believes that the borrower's account is correct; or explain why the information requested is unavailable or cannot be obtained by the loan servicer. *Id.* § 2605(e)(2).[1]

RESPA defines "qualified written request" as "a written correspondence" that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). In implementing RESPA, the Secretary of the Department of Housing and Urban Development promulgated 24 C.F.R. § 3500.21(e)(1) (2010), which provides: "By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests." A loan servicer that fails to comply with section 2605 is liable to an individual borrower for "any actual damages to the borrower as a result of the failure" and "additional damages, as the court may allow, in the case of a pattern or practice of

---

[1] In July of 2010, RESPA was amended by Congress to reduce the time period under section 2605(e)(1)(A) from twenty days to five days, and the time period under section 2605(e)(2) from sixty days to thirty days. Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463(c), 124 Stat. 1376, 2183-84 (2010) ("Dodd–Frank"). The Dodd–Frank amendments, however, were not effective until January 10, 2014. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 n.3 (10th Cir. 2013). Because Plaintiffs do not specify when they sent requests for information pursuant to RESPA, it is unclear whether the preamendment or postamendment deadlines apply here.

**Memorandum Opinion and Order – Page 15**

noncompliance with the requirements of this section, in an amount not to exceed $1,000." *Id.* § 2605(f)(1)(A)-(B).

Plaintiffs' Second Amended Complaint is completely devoid of any factual allegations regarding their request to Defendants for information. Plaintiffs merely allege in conclusory fashion that they sent a QWR to DMI. Such allegations are insufficient because DMI's duty as a loan servicer to respond to a QWR is not triggered under the statute unless Plaintiffs' request for information qualifies as a QWR and was received by DMI. At a minimum, Plaintiffs must allege facts that, if proved, would establish that they: (1) sent a written request to DMI; (2) to the address designated by DMI or Matrix for such requests or, if no exclusive address was designated, to an appropriate address at which DMI would have received it; and (3) requested information that DMI was required to provide under RESPA. *See Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *3 (N.D. Tex. Sept. 7, 2010) (concluding that the loan servicer never received a qualified written request because the plaintiffs' letters were not sent to the exclusive address designated by the loan servicer for such requests) (citing *Bally v. Homeside Lending, Inc.*, 2005 WL 2250856, at *2–3 (N.D. Ill. Sept. 8, 2005), for the proposition that "lender's RESPA duty to respond was not triggered by letters sent to lender's lawyer or faxed to its office, even if lender actually received the letters, where lender had stated that qualified written requests must be sent by mail to a specific address"). Plaintiffs also fail to allege whether their request included information from which DMI could identify their account, the reasons why they believed their account was in error, and the mortgage information sought. *See* 12 U.S.C. § 2605(e)(1)(B).

Moreover, Plaintiffs fail to allege any facts to support their contention that, in the servicing of their mortgage, Defendants engaged in a pattern or practice of noncompliance with RESPA's

requirements. Plaintiffs' pleadings with respect to their RESPA claim are so vague, it is unclear whether they requested information once or several times. Likewise, it is not clear whether Plaintiffs contend that Defendants wholly failed to respond to their request(s) or whether Plaintiffs simply dispute the accuracy of the information provided to them.

Plaintiffs also mischaracterize the holding in *Rawlins v. Dovenmuehle*. Contrary to Plaintiffs' assertion, the court in *Rawlins* merely concluded that neither the plaintiffs nor the defendant in that case was entitled to summary judgment on the plaintiffs' RESPA claim because a genuine dispute of material fact remained. *Rawlins*, 64 F. Supp. 2d at 1164. The *Rawlins* court also expressly declined to address whether the plaintiffs were entitled to pattern or practice damages because the plaintiffs did not seek such damages under section 2605(f)(1)(B). *Id.* at 1164, n.6. Moreover, any such finding in *Rawlins* would be irrelevant as to whether Defendants in this case engaged in a pattern or practice of noncompliance with respect to the servicing of Plaintiffs' mortgage. Accordingly, for all of these reasons, the court determines that Plaintiffs have failed to state a claim under RESPA upon which relief can be granted, and Defendants are entitled to dismissal of this claim.

### 4.    TDCPA

Plaintiffs contend that Defendants violated section 392.001 of the Texas Finance Code by failing to post a $10,000 bond with the Texas Secretary of State before sending collection letters and foreclosure notices. Plaintiffs maintain that Defendants qualify as debt collectors for purposes of the TDCPA because they were in default before their Note and Deed of Trust were transferred to

Defendants in 2004.  Plaintiffs further assert that Defendants violated section 392.304(a)(8)[2] by misrepresenting the amounts actually owed by them, failing to correct inaccuracies, and failing to explain how the amounts due under their Note were calculated.

Defendants counter that Plaintiffs' claim under the TDCPA fails because the TDCPA only applies to debt collectors.  Defendants contend that they do not qualify as debt collectors because Plaintiffs' loan was reinstated after they were discharged from bankruptcy, and it is therefore irrelevant whether they were previously in default before their Note and Deed of Trust were transferred to Defendants. Defendants also contend that Plaintiffs' "vague assertion that '[d]efendants have misrepresented the amounts actually owed by Plaintiffs and have also failed to correct the inaccuracies or offer an explanation in support of the debt amount,'" are the type of conclusory statements forbidden by *Iqbal*. Defs.' Renewed Mot. to Dismiss 14 (citation omitted).

To state a claim under the TDCPA, Plaintiffs must allege that: "(1) the debt at issue is a consumer debt; (2) Defendants are debt collectors within the meaning of the TD[P]CA; (3) Defendants committed a wrongful act in violation of the TDC[P]A; (4) the wrongful act was committed against Plaintiff[s]; and (5) Plaintiff[s] w[ere] injured as a result of Defendants' wrongful act." *May v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-581, 2014 WL 2586614, at *7 (E.D. Tex. June 9, 2014) (citing Tex. Fin. Code Ann. § 392.001, *et seq.*).  Section 392.304(a)(8) provides: "[I]n debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt." *Id.* at § 392.304(a)(8).  For a defendant's statement to constitute a

---

[2] Plaintiffs actually refer to section 392.301(s)(8); however, there is no section (s)(8). The court therefore assumes that Plaintiffs intended to refer to section (a)(8).

misrepresentation under the TDCA, it must have been false or misleading. *Reynolds v. Southwestern Bell Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.—Ft. Worth June 29, 2006, pet. denied). The TDCPA requires "[t]hird-party debt collectors" to obtain a $10,000 "surety bond" from an authorized surety company and file a copy with the secretary of state prior to engaging in debt collection. Tex. Fin. Code Ann. § 392.001 (West 2006).

In *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722-23 (5th Cir. 2013), the court noted that, while the TDCPA defines third-party debt collectors by expressly referencing the FDCPA definition of debt collectors found in 15 U.S.C. § 1692a(6),[3] "the TDCA's definition of debt collector is broader than the FDCPA's definition." *Id.* The court in *Miller* therefore concluded that mortgage servicers and debt assignees are debt collectors under the TDCPA irrespective of whether a plaintiffs' mortgage is already in default at the time of assignment. *Id.* at 723. Thus, regardless of whether Plaintiffs' mortgage was in default when it was assigned to Defendants, the court determines that Defendants, as the mortgage servicer and debt assignee of Plaintiffs' Note and Deed of Trust, are debt collectors under the TDCPA. Further, there are no allegations in Plaintiffs' pleadings from which the court can infer, as contended by Defendants, that Plaintiffs' loan was reinstated or modified after they were discharged from bankruptcy.

The court nevertheless agrees with Defendants that Plaintiffs' TDCPA claim, based on their passing reference to misrepresentations regarding the amount actually owed by them under the Note,

---

[3] The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6) (West 2011). Section 1692a(6) expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another *to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.*" *Id.* § 1692a(6)(F)(iii) (emphasis added).

is entirely too vague and conclusory, and is not supported by any specific allegations.  Plaintiffs do

not allege the substance of the alleged misrepresentation(s) or why they believe any statements by

Defendants were false or misleading.  It is not even clear whether Plaintiffs' claim in this regard is

based on alleged misrepresentations to them or to third-party credit bureaus.  Additionally, Plaintiffs'

contention in this regard appears to pertain to their claim under the DTPA, which the court has

already determined fails as a matter of law.  Defendants are therefore entitled to dismissal of

Plaintiffs' claim based on alleged violations of section 392.304(a)(8) of the TDCPA.

The court also determines that Plaintiffs' TDCPA claim, based on Defendants' failure to

obtain a bond, fails for a reason not addressed by Defendants.  The court therefore **moves** *sua sponte*

to dismiss this claim. Plaintiffs allege that they suffered damages as a result of Defendants'

inaccurate reporting of the amount due under their Note; however, Plaintiffs do not allege that they

suffered any actual damages as a result of Defendants' failure to file a bond.  *Elston v. Resolution*

*Servs., Inc.*, 950 S.W.2d 180, 184-85 (Tex. App.—Austin 1997, no pet.) (concluding that actual

damages are a necessary component of a claim under the TDCPA for violations of the bond

requirement).  Plaintiffs have therefore failed to state a claim upon which relief can be granted.  As

the court moves *sua sponte* on this claim, it will allow Plaintiffs an opportunity to respond to the

court's motion.

## 5.    FDCPA and Dodd-Frank Act

Plaintiffs contend that Defendants' failure to provide a requested accounting is a violation

of section 1692e of the FDCPA and sections 1454 and 1701p-1 of the Dodd-Frank Act.  The court

disagrees.

None of the statutory sections relied on by Plaintiffs supports their contention that Defendants were required to provide them with an accounting of their loan. Section 1692e of the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1454 of the Frank-Dodd Act pertains to the purchase and sale of mortgages, and section 1701p-1 of that Act merely requires certain governmental agencies to develop a method for accurately reporting to Congress on residential mortgage delinquencies and foreclosures. Accordingly, Plaintiffs' contention regarding their entitlement to an accounting under these federal statutes is entirely without merit, and Defendants are entitled to dismissal of Plaintiffs' claims under the FDCPA and the Frank-Dodd Act.

## IV.    Amendment of Pleadings

Plaintiffs have amended their pleadings three times and have not requested to further amend. Plaintiffs' most recent pleading (Second Amended Complaint) does not cure the deficiencies noted in Defendants' prior motion to dismiss. Except for the addition of more legal arguments that are responsive to the Renewed Motion to Dismiss, Plaintiffs' Second Amended Complaint is identical to their First Amended Complaint. The court therefore concludes that Plaintiffs have pleaded their "best case" and will not allow them an opportunity to further amend their pleadings. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Moreover, allowing Plaintiffs to further amend will unnecessarily delay resolution of this action.

## V.    Conclusion

For the reasons stated, the court **concludes** that subject matter jurisdiction exists based on diversity and the amount in controversy, and **denies** Plaintiffs' C.W. Allen, et al., First Amended Motion to Remand Based on Lack of Subject Matter Jurisdiction (Doc. 6). Further, having

determined that Defendants' first motion to dismiss is moot in light of Plaintiffs' amended pleadings and Defendants' Renewed Motion to Dismiss, the court **denies as moot** Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Motion to Dismiss for Failure to State a Claim (Doc. 8).  With respect to Defendants' Renewed Motion to Dismiss, the court **concludes** that Plaintiffs have failed to state any claims upon which relief can be granted. Accordingly, the court **grants** Defendants Dovenmuehle Mortgage, Inc. and Matrix Financial Services Corporation's Renewed Motion to Dismiss for Failure to State a Claim (Doc. 16) *with respect to all claims asserted by Plaintiffs, except their claim pertaining to Defendants' failure to satisfy the TDCPA's bond requirement*, and **dismisses with prejudice** *all claims asserted by Plaintiffs other than their claim pertaining to Defendants' failure to satisfy the TDCPA's bond requirement*.  Further, for the reasons explained, the court **moves *sua sponte*** to dismiss Plaintiffs' remaining claim based on Defendants' failure under the TDCPA to obtain a bond.  **Plaintiffs shall file a response to the court's sua sponte motion by August 1, 2014.  Defendants shall not file a reply unless directed by the court to do so.**

**It is so ordered** this 21st day of July, 2014.

Sam A. Lindsay
United States District Judge